**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOHN MICHAEL VULPIS

      Petitioner,

v.                                         Case No.: 8:11-cv-2620-T-36EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

Petitioner, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his convictions for robbery and attempted robbery entered in 2006 in the Thirteenth Judicial Circuit, Hillsborough County, Florida. Upon review, the petition must be denied.

## PROCEDURAL HISTORY

The State of Florida charged Petitioner with one count of robbery and one count of attempted robbery. On June 28, 2006, Petitioner entered open pleas of guilty to both offenses. The state court conducted sentencing hearings on July 12, 2006, and October 20, 2006. On October 20, 2006, Petitioner was sentenced to eights years' imprisonment, followed by seven years' probation, on the robbery charge. On the same date, he was sentenced to five years' probation on the attempted robbery charge. The terms of probation were to run consecutively.

The Second District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences on October 12, 2007. *Vulpis v. State*, 976 So.2d 1114 (Fla. 2d DCA 2007) (table).

Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on March 16, 2008.  (Dkt. 7, Ex. 2A.)  His motion was summarily denied in an order filed June 2, 2008.  (Dkt. 7, Ex. 2B.)  The record reflects, however, that prior to the entry of this order, Petitioner had filed a motion for voluntary dismissal of his Rule 3.850 motion.  (Dkt. 7, Ex. 2D.) Therefore, on July 1, 2008, the state court vacated its order denying Petitioner's Rule 3.850 motion and permitted him to voluntarily withdraw the motion.  (Dkt. 7, Ex. 2E.)  The Second District Court of Appeal dismissed Petitioner's appeal of the order denying his Rule 3.850 motion on July 28, 2008.  (Dkt. 7, Ex. 2G.)

Petitioner next filed a petition for writ of habeas corpus in the Second District Court of Appeal, which treated the pleading as a petition for ineffective assistance of appellate counsel and denied it on April 15, 2009.  (Dkt. 7, Ex. 3B.)  On May 13, 2009, Petitioner filed another Rule 3.850 motion, as well as a supplement to the motion.  (Dkt. 7, Ex. 4E, Vol. 1, Motion for Post-Conviction Relief; Motion to Supplement Defendant's Post Conviction Motion.)  The state court summarily denied several of his claims and held an evidentiary hearing on the remaining claims.  (Dkt. 7, Ex. 4E, Vol. 1, Order to Respond, in Part, Denying, in Part, Motion for Postconviction Relief; Order Denying, in Part, Motion for Postconviction Relief and Supplement to Defendant's Postconviction Motion; Order Granting Evidentiary Hearing on Motion for Postconviction Relief.)   After the evidentiary hearing, the state court filed its final order denying relief on December 22, 2009.  (Dkt. 7, Ex. 4E, Vol. 2, Final Order Denying Motion for Postconviction Relief.)  Petitioner filed a motion for rehearing, which was denied in an order filed February 11, 2010.  (Dkt. 7, Ex. 4E, Order Denying Motion to Reconsider Decision Rendered in Order Denying Motion for Postconviction Relief/Motion for Rehearing.)  The Second District Court of Appeal *per curiam* affirmed the denial

of Petitioner's Rule 3.850 motion on October 7, 2011.  *Vulpis v. State*, 88 So.3d 165 (Fla. 2d DCA 2011) (table).  The mandate issued on November 17, 2011.

Petitioner filed his habeas petition on November 16, 2011.  Respondent filed its response (Dkt. 5) on January 13, 2012, and Petitioner filed a reply (Dkt. 10) on February 1, 2012.  Petitioner also filed a motion for evidentiary hearing (Dkt. 14) on April 9, 2014.  Respondent acknowledges that this habeas petition is timely.

## STANDARD OF REVIEW

### AEDPA

This petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d) sets forth a highly deferential standard for federal court review of a state court's findings of law and fact.  It provides that habeas relief may not be granted on a claim adjudicated on the merits in state court unless such determination:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained the deferential review of a state court's findings:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state

court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's factual findings must also be given deference. Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

**Exhaustion and Procedural Default**

In order to pursue federal habeas relief, a state prisoner must exhaust every available state court remedy for challenging his conviction. 28 U.S.C. § 2254(b)(1). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c); *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

To exhaust state remedies, a petitioner must make the state court aware of both the legal and factual bases for his claim. A petitioner must "fairly present" his federal claim in state court. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). "To present a federal constitutional claim properly in state court, 'the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (quoting *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998)).

"[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). Exhaustion therefore requires that the petitioner present the state court with the particular legal basis for relief, as well as the facts supporting the claim. *See Snowden*, 135 F.3d at 735.

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). *See also O'Sullivan*, 526 U.S. at 848; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

**Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To obtain relief under *Strickland*, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the petitioner. *Id*. at 687. In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When a case involves a plea, the prejudice inquiry focuses on whether there is a reasonable probability that, absent counsel's deficient performance, the petitioner would have insisted on proceeding to trial rather than entering the plea. *Hill v. Lockhart*,

474 U.S. 52, 58-59 (1985).

Counsel is presumed to have provided effective assistance. *Strickland*, 466 U.S. at 690. Further, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. If a reviewing court can dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court need not consider the other prong. *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

## DISCUSSION

### Ground One: "Ineffective Assistance of Counsel; Failure to Adequately Advise Petitioner of the Consequences of Rejecting a Favorable Plea Offer."

Petitioner entered open pleas of guilty in this case and was sentenced to eight years' imprisonment, followed by a composite term of twelve years' probation. Petitioner asserts that the State initially offered him a more favorable plea deal, but that his attorney provided ineffective assistance when he advised Petitioner to reject this offer. Specifically, Petitioner claims that at his April 26, 2006 arraignment, the State offered him a sentence of 16.8 months' imprisonment in exchange for pleading guilty as charged. He asserts that counsel advised him that it would instead be in his best interest to pursue "some type of 'rehabilitative program' due to his long-term addiction to cocaine" and that this could be accomplished through an open plea. (Dkt. 1, pp. 5, 6.) Petitioner contends that he was accepted to be an in-house patient at Phoenix House, which appears to be a residential treatment center.

Based on this information, Petitioner states, he rejected the State's initial 16.8 month offer and proceeded to enter an open plea of guilty at his next hearing. Petitioner contends that counsel failed to advise him of the consequences of rejecting the State's initial offer. He contends that, had

counsel offered adequate advice, there is a reasonable probability he would have accepted the State's initial offer.

Petitioner concedes that he did not raise this claim in his Rule 3.850 motion.  He states that because this information was "revealed at the evidentiary hearing" held by the state court, he brought the claim in his motion for rehearing and his appeal of the state court's order denying his Rule 3.850 motion. (Dkt. 1, p. 9.)  The record reflects that Petitioner did not raise this claim in his Rule 3.850 motion.  Furthermore, while he did not raise it as a separate claim in his motion for rehearing, he did assert facts concerning the 16.8 month plea offer in arguing about the overall claim of ineffective assistance of counsel presented in ground two of his Rule 3.850 motion.  (See Dkt. 7, Exhibit 4E, Vol. 2, Motion to Reconsider Decision Rendered in Order Denying Motion for Post Conviction Relief/Motion for Rehearing, pp. 2, 3, 4,6, 9.)  In his collateral appeal brief, Petitioner partially supported his claim that counsel was ineffective with allegations that the consequences of rejecting the initial plea were not discussed.  (Dkt. 7, Ex. 4A, pp. 5, 6, 23.)  To the extent this argument was raised in his motion for rehearing or his collateral appellate brief, however, Petitioner is not entitled to relief in federal habeas proceedings.

In Florida, petitioners must raise their collateral claims in a timely motion for postconviction relief.  While a motion for rehearing is permitted following the denial of a Rule 3.850 motion, a motion for rehearing cannot be used to raise new collateral claims.  *See Jackson v. State*, 762 So.2d 1065 n.1 (Fla. 4th DCA 2000) (citing *Reid v. State*, 745 So.2d 363 (Fla. 4th DCA 1999)).  Accordingly, Petitioner's failure to raise this ground in his Rule 3.850 motion means that he did not properly present this claim to the state court.  "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the

state courts." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). The claim raised in Ground One is therefore procedurally defaulted.

A procedurally defaulted ground may be reviewed on the merits if a petitioner can show that either the cause and prejudice or manifest injustice exception applies. To show cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999.) *See also Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with errors of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982).

Petitioner claims in his reply that he raised this issue in his motion for rehearing because the information supporting it came out during the evidentiary hearing. Specifically, he alleges that he did not raise this issue in his Rule 3.850 motion because he did not think he could prove that the previous plea offer was made, but that "to the petitioner's surprise, it was the attorneys who open[ed] the door at the evidentiary hearing by confirming the State's offer of the bottom-of-the-guidelines." (Dkt. 10, p. 3.)[1] To the extent this can be considered an argument that the cause and prejudice exception should apply, however, Petitioner is not entitled to relief.[2]

---

[1]Petitioner refers to the plea offer of 16.8 months as being at the "bottom of the guidelines" in this petition. He apparently refers to his Criminal Punishment Code Scoresheet, which provided that the lowest permissible sentence was 16.875 months, and the maximum permissible sentence was thirty years. (Dkt. 7, Ex. 1F, Criminal Punishment Code Scoresheet.) It is noted that the court and parties agreed during the proceedings that the maximum permissible sentence was in fact twenty years' imprisonment.

[2]Petitioner further alleges in his motion for evidentiary hearing that the cause and prejudice exception applies because his attempts at the state court evidentiary hearing to develop a factual basis for the claims presented in Grounds One and Two of his habeas petition were unsuccessful due to the performance of collateral counsel and the State.

Petitioner has not shown that he could not have brought this claim in his Rule 3.850 motion, in accordance with established state procedures.  He does not assert that he had no personal knowledge of the initial plea offer.  To the contrary, he claims in his habeas petition that he considered this offer but that counsel erroneously advised him not to accept it.  He states that after conversations with counsel, he "then rejected the state's favorable plea offer and entered a plea of not guilty."  (Dkt. 1, p. 6.)  By his own account, therefore, Petitioner knew of the initial plea offer.  He does not demonstrate why he could not have properly raised this claim in his Rule 3.850 motion.  Therefore, he is unable to show cause for the default.  Ground One provides no relief for Petitioner.

**Ground Two: "Counselor Failed to Object to Prosecutorial Misconduct Where Prosecutor Alleged that an Offer Had Never Been Made; Had Counselor Objected, There is a Likelihood the Court Would Have Sentenced the Petitioner Differently."**

Petitioner contends that during his sentencing hearing, the court asked the prosecutor on three occasions if any type of offer had been made to Petitioner and that the prosecutor failed to inform the court of the initial plea offer of 16.8 months' imprisonment.  Petitioner argues that his attorney  failed to object to this alleged misinformation and to inform the sentencing court of the initial offer.  He claims that there is a reasonable probability that the outcome of the sentencing proceedings would have been different absent counsel's allegedly ineffective assistance.

Respondent contends that this claim was not presented to the state courts in Petitioner's Rule 3.850 motion, in his motion for rehearing, or in his collateral appeal, and that it is consequently barred from review in federal habeas proceedings.  Petitioner asserts in his habeas petition that he raised this ground in his motion for rehearing and on collateral appeal.  (Dkt. 1, p. 12.)  Similar to his position as to Ground One, he appears to contend in his habeas petition that the claim was not raised earlier because "[t]he state's offer of the bottom of the guidelines was not confirmed until

testimony was elicited from the evidentiary hearing." (Dkt. 1, p. 12.) But in his reply, Petitioner also asserts that he raised this issue in his Rule 3.850 motion to the extent that the facts supporting the argument "were developed" in ground two of his Rule 3.850 motion. Therefore, he argues, the state courts had an opportunity to review this claim and it is exhausted.

The record reflects that ground two of Petitioner's Rule 3.850 motion raised the following argument: "When applying the Strickland test, the Defendant's guilty plea was infected by counselor's performance due to misunderstanding, persuasion, lack of communication, coercion and misrepresentation which also included a promise concerning the length of sentence." (Dkt. 7, Ex. 4E, Vol. 1, Motion for Postconviction Relief, p. 7.) Now, in his reply, Petitioner points to specific portions of his Rule 3.850 motion to support his claim that he presented to the state court the issue presented in Ground Two of his habeas petition.

However, the record reflects that Petitioner did not raise the claim presented in Ground Two of his habeas petition in his Rule 3.850 motion. In the portion of his Rule 3.850 motion referred to in his federal habeas reply, Petitioner argued about the alleged promise from his attorney that he would be sentenced to treatment at Phoenix House, not about the 16.8 month offer from the State that he addresses in his habeas petition. (Dkt. 10, p. 7; Dkt. 7, Ex. 4E, Vol. 1, Motion for Post-Conviction Relief, p. 10.) This conclusion is supported by a review of the transcript citations Petitioner listed in this part of his Rule 3.850 motion.[3] Those portions of the record all concerned Petitioner's contention that he believed he would receive a sentence of drug treatment and probation. Moreover, Petitioner did not expressly argue in his Rule 3.850 motion, as he does here, that counsel

---

[3]Specifically, Petitioner refers to the following portions of the transcript of the October 20, 2006 sentencing hearing: page 12, lines 1-4; page 15, lines 8-14; and page 17, lines 3-16. (See Dkt. 7, Ex. 4E, Vol. 1, Motion for Postconviction Relief, p. 10.)

was ineffective for failing to object to "prosecutorial misconduct" in that the prosecutor failed to inform the judge of a previous offer by the State.

Therefore, Petitioner did not raise the claim now presented in Ground Two of his habeas petition in his Rule 3.850 motion.[4]  Accordingly, this federal habeas claim has not been properly presented to the state court and is therefore procedurally defaulted.  To the extent that Petitioner's claim that this information was not confirmed until the evidentiary hearing can be considered as an argument that the cause and prejudice exception applies to his procedurally defaulted claim, he is not entitled to relief.  Petitioner was present at the sentencing hearing where, he claims, the prosecutor failed to inform the trial court of the previous offers.  He has not explained why he could not have properly raised this claim in his Rule 3.850 motion, in accordance with established collateral procedures.  He has not, therefore, shown cause for the default.  Accordingly, Petitioner is not entitled to a review of the merits of the claim he now raises.  Ground Two warrants no relief.

**Ground Three: "Ineffective Assistance of Counsel; Misadvising Petitioner to Plead Guilty Without An Agreement Where Plea was Induced on Counselor's Misinformation of the Law and A Promise Concerning the Length of Sentence."**

Petitioner argues that counsel provided ineffective assistance during plea proceedings. Petitioner entered his pleas on June 28, 2006.  He alleges that, at the start of court proceedings on that date, his attorney informed him that the judge that day would be more likely than the "original judge" to impose drug treatment and that, by entering an open plea, Petitioner could reasonably expect to be placed in a drug treatment facility.  (Dkt. 1, p. 13.)  Petitioner contends that Judge Foster was the judge assigned to hear his case, but that Judge Barbas was filling in that day.

---

[4]The record supports Respondent's contention that Petitioner did not raise this allegation in his motion for rehearing following the denial of his Rule 3.850 motion, or in his collateral appeal brief.  (See Dkt. 7, Ex. 4E Vol. 2, Motion to Reconsider Decision Rendered in Order Denying Motion for Postconviction Relief/Motion for Rehearing; Dkt. 7, Ex. 4A.)

Petitioner further contends that his initial attorney, Assistant Public Defender David Hall, informed him that he only needed to sign a plea acknowledgment form and enter an open plea to obtain a sentence of treatment and probation.  Petitioner contends, however, that another attorney, Assistant Public Defender Christopher Watson, began assisting with his case during a recess in the court proceedings on June 28, 2006.  Petitioner asserts that, after his discussion with Mr. Hall about entering an open plea and obtaining treatment, Mr. Watson informed Petitioner for the first time that the State was seeking a ten-year sentence.  Petitioner contends that when Mr. Watson brought up the possibility of a negotiated split sentence, Petitioner indicated his belief to Mr. Watson that he already had an agreement with Mr. Hall for drug treatment.

Petitioner argues that, at this point, his attorneys informed him that he could "reasonably expect" to enter a treatment facility and also incorrectly told him that he would not be sentenced to a term of more than twenty-five percent above the bottom of the guidelines in accordance with Florida sentencing statutes.  (Dkt. 1, p. 14.)  Thus, Petitioner asserts, he believed he could not be sentenced to more than twenty-two months' imprisonment.  Petitioner contends that it was upon this erroneous advice that he entered into an open plea.  Petitioner also appears to argue that his confusion due to this incorrect information was apparent at the October 20, 2006 sentencing hearing, when he expressed his belief that a guidelines sentence could not exceed twenty-two months.

Petitioner raised a portion of this claim in ground two of his Rule 3.850 motion, in which he argued that counsel's performance, including coercion, misrepresentation, and a promise concerning the length of his sentence "infected" his guilty plea.  (Dkt. 7, Ex. 4E, Vol. 1, Motion for Postconviction Relief, p. 7.)  Petitioner also raised part of this claim in ground four of his Rule 3.850 motion, in which he argued that counsel was ineffective for misapplying a sentencing statute.  The

state court conducted an evidentiary hearing on these claims.

At the evidentiary hearing, Mr. Hall testified that Petitioner made a plea offer for one year and one day; after this offer was rejected, Petitioner made clear that he was interested in rehabilitation. (Dkt. 4E, Vol. 1, Transcript of November 3, 2009 Evidentiary Hearing, p. 26.) He testified that "the efforts were directed towards mitigation and Phoenix House." (*Id*.) Mr. Hall testified that, because Petitioner was focused on receiving treatment, "our only option" was to enter an open plea to try and obtain such a sentence. (*Id*., pp. 26, 27.)

Mr. Hall testified that he would not have promised Petitioner that he could have been sentenced to Phoenix House, and that he "would've stated that the State would never agree to that." (*Id*., p. 27.) Therefore, Mr. Hall testified, "the only way that he could receive treatment would be by taking his chances with the Court" and "being able to argue that he should go to the Phoenix House for treatment." (*Id*., p. 27.) Mr. Hall testified that he did not recall informing Petitioner that the worst sentence he could receive would be twenty-two months' imprisonment, and that he was "not aware of a law to that effect." (*Id*., p. 28.) Rather, he testified that he "would've said that if he chose to plead open and argue for Phoenix House and rehabilitation, that he would run the risk that the Court could sentence him on the other hand to anywhere from the bottom of the guidelines to the maximum on each charge." (*Id*., p. 28.) Mr. Hall testified that he did not promise Petitioner any particular sentence. (*Id*., p. 29.)

Mr. Watson testified at the evidentiary hearing that he and Petitioner discussed entering a plea. (*Id*., pp. 30-31.) He further testified that, in his discussions with the Assistant State Attorney, he became aware that the State was considering amending the information to charge Petitioner with armed robbery. (*Id*., p. 31.) Mr. Watson testified that he informed Petitioner of this development.

(*Id.*)  Mr. Watson further testified that he informed Petitioner that, in his experience with the sentencing court, defendants often received sentences involving prison time followed by drug treatment and probation.  (*Id.*)  Mr. Watson testified that on the date Petitioner entered his plea, there was no offer from the State.  (*Id.*, pp. 32, 33.)

Furthermore, he testified, at that time, the State was "suggesting that if it went further, they would upgrade the charge.  And they were suggesting that if he entered a plea, they were going to be asking for ten years in prison."  (*Id.*, p. 33.)  Mr. Watson testified that he never told Petitioner that the worst sentence that could be imposed was twenty-five percent above the bottom of the guidelines and that "until I read his motion; I've never even heard a theory espoused for that sort of thing.  That's not part of our sentencing lexicon.  It's not something that we would discuss with somebody."  (*Id.*, p. 34.)  Mr. Watson testified that if the charge had been amended to armed robbery, Petitioner would have faced life imprisonment, and that he discussed with Petitioner that entering a plea would "freeze the charge and the Government would not be able to file a superseding information."  (*Id.*, p. 35.)

Petitioner testified that, in his discussions with Mr. Hall, he was "promised that if I entered into a guilty plea by signing these forms here and pleading out before Judge Barbas, that I in fact would receive the Phoenix House with possibly some probation."  (*Id.*, p. 7.)  He further testified that it was his understanding with this attorney that he "was either going to get the Phoenix House, or worst case scenario, 22 months prison with this other information that they threw at me that the State can't sentence you by more than 25 percent above the bottom of your guidelines."  (*Id.*, p. 9.)  Petitioner testified that Mr. Hall made him aware of a plea offer for sixteen months, but that he wanted to pursue treatment.  (*Id.*, p. 10.)  Petitioner testified that he would not have entered his plea

had he known that he would not in fact receive a sentence consisting of treatment and probation. (*Id.,* p. 15.)  Petitioner acknowledged that both Judge Foster and Judge Barbas informed him that he was entering an open plea and there would be no guaranteed sentence, and testified that he decided to enter the plea based on counsel's advice concerning what sentence he could expect to receive.  (*Id.*)

Petitioner further testified that he waived his right to be sentenced by Judge Barbas.  (*Id.*, pp. 11, 12.)  Petitioner acknowledged in his testimony that the court gave him several opportunities to withdraw his plea.  (*Id.*, pp. 18, 19.)  He reiterated in his testimony that he rejected Mr. Watson's discussions about attempting to negotiate a split sentence because his conversations with Mr. Hall led him to assume that he would be sentenced to Phoenix House.  (*Id.*, pp. 16, 17.)

As to his claim that counsel was ineffective for misapplying the sentencing statute, Petitioner testified that, after the court recess, he spoke with both Mr. Hall and Mr. Watson and that they told him not to worry about the ten-year sentence sought by the State "because they cannot, like statutorily, sentence you by more than 25 percent above the bottom of the guidelines." (*Id.*, p. 20.) Petitioner testified that "we figured that out to be like around 22 months.  And then with that information, I was assured that the worst that I was going to have to do was 22 months prison." (*Id.*)

Petitioner acknowledged in his testimony that both judges informed him he could be sentenced to up to twenty years in prison, and that he understood that the sentence would be at the court's discretion because he entered an open plea.  (*Id.*, pp. 18, 22-23.)  But he also testified that his understanding of these statements was "corrupted" by counsel's inaccurate advice about the sentence he could receive.  (*Id.*, p. 20.)

The state court denied Petitioner's claims after the evidentiary hearing:

The Court finds the testimonies of Mr. Hall and Mr. Watson to be credible and finds that each attorney provided effective assistance of counsel. As to the allegations raised in ground two, the Court finds that Defendant was made aware that the State was seeking a sentence of ten years' FSP, and that Defendant was aware Judge Barbas would accept his plea only if Defendant waived his right to be sentenced by Judge Barbas. The Court finds that there was not an offer from the State on the date Defendant entered his plea and that Defendant's attorneys kept him apprised of events as they happened. Moreover, upon further review of the record, the Court finds that the record demonstrates that Defendant was given an opportunity to withdraw his plea but he instead asked to be sentenced within the guidelines. Accordingly, Defendant is not entitled to any relief on ground two.

As to the allegations raised in ground four, the Court finds that neither attorney advised Defendant the court could only impose a total sentence of twenty-five percent above the bottom of the guidelines. Accordingly, Defendant is not entitled to any relief on ground four.

(Dkt. 7, Ex. 4E, Vol. 2, Final Order Denying Motion for Postconviction Relief, pp. 5-6.)

The state court found the testimony of Petitioner's attorneys to be credible. In federal habeas proceedings, deference is given to a trial court's credibility determinations, and such findings may be disturbed only if they are unreasonable in light of the evidence. *See Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007). The record, including Petitioner's testimony at the evidentiary hearing, supports the state court's findings that Petitioner was aware that the State sought a ten-year sentence, and that no sentencing agreement was in place at the time Petitioner entered his plea. Moreover, credible testimony before the court indicated that counsel did not promise Petitioner that he would receive any particular sentence and did not advise Petitioner that he could not be sentenced in excess of twenty-two months' imprisonment. Rather, counsel discussed with Petitioner that the only way to present argument to the court that he should be sentenced to treatment and probation was to enter an open plea. Additionally, the record does not indicate that counsel misinformed Petitioner about the maximum sentence he faced under the guidelines.

Page 16 of 22

Therefore, the record supports the state court's conclusion that Petitioner did not enter his plea based upon misinformation or inadequate advice from counsel concerning his sentence.  The record reflects that Petitioner's guilty plea was knowingly and voluntarily entered.  Additionally, Petitioner has not shown how counsel can be deemed ineffective for the reasons asserted in Ground Three.[5]  Petitioner has not shown that the state court's finding was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented.   Consequently, he is not entitled to relief on Ground Three.

**Ground Four: "Trial Counsel's Performance Was Rendered Ineffective When He Failed to Object to the Sentence Imposed Where Sentencing Court Imposed a Maximum Sentence After Declaring in Open Court A Much Lesser Sentence: 'Rehab and Probation.'"**

Petitioner claims that counsel was ineffective for failing to object to the sentence imposed on the basis that it differed from the court's previously stated intentions concerning his sentence and was therefore vindictive.  Specifically, Petitioner asserts that on July 12, 2006, the court stated that it would impose a sentence of "rehab and some probation."  (Dkt. 1, p. 18.)  However, on October 20, 2006, he was sentenced to eight years' imprisonment followed by an aggregate term of twelve years' probation.  Petitioner also contends that the court's statement after imposing his sentence that "That's a guidelines sentence" indicates "retaliatory motivation for vindictiveness."  (Dkt. 1, p. 20.) Petitioner asserts that if his attorney had objected to the sentence and reminded the court of its previous statements, there is a reasonable probability the outcome of the proceedings would have

---

[5] Further, even assuming that counsel inaccurately advised Petitioner about the sentence likely to be imposed, an inaccurate prediction about sentencing is not generally sufficient to sustain a claim of ineffective assistance of counsel.  *See United States v. Himick*, 139 Fed. App'x 227, 228-29 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence."); *United States v. Pease*, 240 F.3d 938, 940-41 (11th Cir. 2001) (rejecting argument by defendant sentenced as career offender that his plea was not knowing and voluntary because he had relied on counsel's prediction that his potential sentence under the plea agreement would be anywhere from five to ten years when, in fact, he faced a ten-year minimum mandatory sentence).

Page 17 of  22

been different and he would have been sentenced to rehabilitation and probation in accordance with the court's initial statements.

Petitioner raised substantially the same claim in ground six of his Rule 3.850 motion, in which he argued that counsel was ineffective for failing to object to a vindictive sentence. The state court summarily denied this claim. The court started its analysis by determining that the sentence imposed was not vindictive under Florida law, and went on to find that counsel was not ineffective for failing to object to the sentence imposed:

> [T]he Court does not find that Defendant's sentence was vindictive. "If a court inserts itself into plea negotiations, and if a harsher than offered sentence is meted out after the rejection of the bargain, a determination must be made regarding whether there is a reasonable likelihood that the harsher sentence was vindictive." *See Evans v. State*, 979 So.2d 383, 385 (Fla. 5th DCA 2008). In determining whether a sentence is vindictive, the factors to consider are: "(1) whether the trial judge initiated the plea discussions in violation of *State v. Warner*, 762 So.2d 507 (Fla.2000); (2) whether the trial judge, through comments on the record, appears to have departed from the role of impartial arbiter by urging acceptance of a plea, or by implying that the sentence hinged on future procedural choices; (3) the disparity between the plea offer and the sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence." *Confessore v. State*, 2009 WL 1636283 *1 (Fla. 5th DCA June 12, 2009) (citing *Wilson v. State*, 845 So. 2d 142, 156 (Fla. 2003)).
>
> But here, the judge never initiated plea negotiations. Defendant entered open guilty pleas on June 28, 2006. The comments complained of by Defendant occurred at the *July 12, 2006*, sentencing hearing. Thus, any comments made by the trial judge on July 12, 2006, could not have been part of the plea negotiations and the sentence cannot be considered vindictive because Defendant had already entered his guilty pleas. Thus, the Court does not find counsel's actions ineffective for failing to object to the imposed sentence.

(Dkt. 7, Ex. 4E, Vol. 1, Order Granting Motion to Supplement Defendant's Postconviction Motion; And Order Denying, in Part, Motion for Postconviction Relief and Supplement to Defendant's Postconviction Motion, pp. 2-3) (court's record citations omitted).

The record reflects that Petitioner entered his open pleas of guilty on June 28, 2006. At the

Page 18 of 22

July 12, 2006 sentencing hearing, Petitioner argued for a sentence that would resolve his drug dependency issues and presented his own testimony, as well as testimony from his mother and sister. (Dkt. 7, Ex. 1F, Transcript of July 12, 2006 Hearing, pp. 11-13, 18-27, 28-30.)  The victims were not present.  At the conclusion of the hearing, the court stated, "I will do something that will balance the sentence.  Rehab and some probation is what I'm going to do."  (*Id.*, p. 30.)  The proceedings were continued.  At the next and final hearing, on October 20, 2006, one of the victims testified. The State indicated its request for a ten-year prison sentence, and defense counsel again argued for a sentence including treatment.  (Dkt. 7, Ex. F1, Transcript of October 20, 2006 Hearing, pp. 10-11, 18.)

The record supports the state court's conclusion that, after Petitioner entered his open pleas, any subsequent comments concerning his sentence could not be considered to be part of any plea negotiations or to have influenced Petitioner's decision to enter his pleas in reliance on such a sentence.  The record further supports the state court's conclusion that the sentence ultimately imposed was not a vindictive one.  Accordingly, the state court determined that counsel could not be deemed ineffective for failing to raise a meritless objection to the sentence.

To the extent that Petitioner's argument also encompasses the claim that counsel should have objected simply on the grounds that the sentence imposed was harsher than the potential sentence the judge indicated earlier, he has not demonstrated any entitlement to relief.  As noted, Petitioner entered open pleas and no particular sentence was guaranteed.  Any subsequent indication of a lesser sentence made by the court was not a plea agreement for which counsel would have any basis to object.  Petitioner has not shown how counsel can be deemed ineffective for failing to object under these circumstances.  Accordingly, Petitioner has not shown that the state court's finding was

contrary to or an unreasonable application of clearly established federal law.  Ground Four provides

no relief.

**Ground Five: "Trial Court Erred By Not Appointing 'Conflict-Free' Counsel When That Need Became Apparent."**

Petitioner argues that during the sentencing proceedings, defense counsel indicated a possible

need for a conflict-free attorney.  Petitioner contends that conflict-free counsel was needed and that

the sentencing court failed to conduct a proper inquiry and erred when it did not appoint him

conflict-free counsel.  Petitioner asserts that "[t]he denial of the constitutional right to assistance of

counsel can never be treated as harmless error" and that "the record demonstrates a clear violation

of due process constituting fundamental error."  (Dkt. 1, p. 27.)

Petitioner raised this claim on direct appeal.  (Dkt. 7, Ex. 1A, pp. 9-20.)  Respondent asserts

that this claim is procedurally barred because Petitioner failed to raise a federal constitutional

question when he presented this claim to the state court.  In his reply, Petitioner asserts that he

demonstrated in his state court filings that he had an adversarial relationship with counsel.  In

addressing the matter of conflict-free counsel, he states that "this violation of due process and

constitutional error *is on the face of the record* ...."  (Dkt. 10, p. 15.)  He therefore contends that he

has set forth portions of the record that support his claim and that he has "presented ample

opportunity to the State Courts to apply controlling legal principles to the facts bearing upon his

constitutional claim."  (Dkt. 10, p. 16.)

A review of the direct appeal record reflects that Petitioner did not raise his constitutional

claim to the state court.  Petitioner argued on direct appeal that the sentencing court should have

appointed conflict-free counsel because Petitioner's plea was entered based upon a misunderstanding

and was thus involuntary, and further contended that counsel failed to hold the State to its assertions

that it would only seek ten years' imprisonment.  (Dkt. 7, Ex. 1A, pp. 9-20.)  Petitioner relied on

state law to support his claim that the sentencing court should have appointed substitute counsel.

(*Id.*)  Further, in presenting his argument, Petitioner did not expressly state that he was alleging a

federal constitutional violation.   (*Id.*)  Accordingly, he cannot be said to have fairly presented the

constitutional dimension of his claim to the state court.  *See Duncan*, 513 U.S. at 366.  Therefore,

his claim is procedurally defaulted.[6]  Petitioner does not argue or demonstrate that either the cause

and prejudice or fundamental miscarriage of justice exception applies to excuse his default.

Consequently, Petitioner has not shown that he is entitled to relief on Ground Five.

Any of Petitioner's allegations not specifically addressed herein have been found to be

without merit.

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's Petition for Writ of

Habeas Corpus (Dkt. 1) is **DENIED**.   It is further **ORDERED** that Petitioner's Motion for

Evidentiary Hearing (Dkt. 14) is **DENIED** as moot.  The Clerk is directed to enter judgment against

Petitioner and close this case.

**Certificate of Appealability**

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability.  A

petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.

28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*

---

[6]The record supports Respondent's position that this issue is also procedurally barred in federal habeas proceedings because, as addressed in the State's answer brief on direct appeal, it was not preserved for appellate review in that counsel failed to object when the court did not appoint a conflict-free attorney after defense counsel raised this issue during sentencing.  *See Harrell v. State*, 894 So.2d 935, 940 (Fla. 2005) (explaining that to preserve an issue for appeal, a party must "make a timely, contemporaneous objection," as well as "state a legal ground for that objection").

"A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made this showing.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on August 28, 2014.

Charlene Edwards Honeywell
United States District Judge

SA:mcl
Copy furnished to:
*Pro se* Plaintiff
Counsel of Record